# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-4154

_____

|  |  |  |
|---|---|---|
| Melvin Carpenter, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Kelly Lock, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  March 16, 2001
Filed:  July 17, 2001

_____

Before HANSEN and HEANEY, Circuit Judges, and FENNER,[1] District Judge.

_____

HANSEN, Circuit Judge.

Melvin Carpenter appeals from the district court's[2] denial of his motion pursuant to 28 U.S.C. § 2254 for habeas corpus relief following his conviction on one count of drug trafficking in the first degree and one count of delivery of a controlled substance

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

after a jury trial in a Missouri state court. On appeal, Carpenter argues that the identity of the State's confidential informant should have been revealed prior to his trial. We conclude, however, that Carpenter has not shown any ground entitling him to habeas relief; therefore, we affirm the district court's judgment.

## I. Background

On March 28, 1994, Officer Robert Shinn was working as an undercover narcotics officer. Officer Shinn and a confidential informant entered a residence in Ferguson, Missouri, where they were greeted by a woman named Robin. Another female, named Lee Ann, was also present. Soon after they arrived, a black male who identified himself as "Blacky" appeared. Officer Shinn testified that Blacky asked who wanted to do business. Officer Shinn responded that he did and then went with Blacky into the residence's master bedroom.

After they entered the bedroom, Officer Shinn testified that Blacky scanned him with his eyes and asked whether he was a police officer. Officer Shinn said no, and then asked Blacky, "Are you?" They had a short conversation. Blacky then removed a bag from his sock and broke off 3.5 grams of crack cocaine and gave it to Officer Shinn in exchange for $250. Officer Shinn testified that he was in the bedroom for approximately five to eight minutes. The confidential informant remained in the living room of the residence during the entire time Officer Shinn was in the bedroom. Before Officer Shinn left the residence, Blacky gave him a piece of paper with his pager number on it.

On March 30, 1994, Officer Shinn contacted Blacky by using the pager number. The two arranged to meet at a motel parking lot. Blacky arrived in a blue Mustang accompanied by a white female. Blacky asked Officer Shinn if he knew anyone who could exchange marijuana for crack cocaine. Officer Shinn told him he could get five pounds of marijuana. The two agreed to exchange two pounds of marijuana for two

2

ounces of crack cocaine. Blacky then gave Officer Shinn a small piece of crack cocaine as a "good-faith" offer to complete the transaction. Officer Shinn tried to page Blacky again at a later date, but was unable to reach him.

At trial, Officer Shinn testified that he prepared a report of each incident on the night of each incident or shortly thereafter; however, Officer Shinn testified that he did not seek an arrest warrant until September 12, 1994, (nearly six months after the events) in order to protect the identity of the confidential informant. Officer Shinn identified the defendant, Melvin Carpenter, as the individual he knew as Blacky from the March 28 and March 30 encounters. He stated that he did not know Carpenter's name when they first met on March 28, 1994, but that he determined Carpenter's name shortly after the second transaction through his investigation.

On August 23, 1995, Carpenter was convicted following a jury trial in the Circuit Court of St. Louis County of one count of first-degree drug trafficking and one count of delivery of a controlled substance. The trial court sentenced Carpenter as a prior and persistent drug offender to two concurrent fifteen-year terms.

Before trial, Carpenter moved for disclosure of the confidential informant for two reasons. First, he argued disclosure of the confidential informant was necessary to his defense of mistaken identity. He argued that even though the informant may not have been present during the transaction, the informant made the arrangements for the meeting and would be a key witness in identifying whether Carpenter was in fact Blacky. Second, Carpenter argued it was necessary to know the name of the informant in order to determine whether he could advance an entrapment defense. The trial court, without elaboration, determined that the criteria for disclosure were not met and denied the motion. On appeal, the Missouri Court of Appeals summarily affirmed his convictions and the denial of Carpenter's state court motions for post-conviction relief without an opinion. See State v. Carpenter, 947 S.W.2d 468 (Mo. Ct. App. 1997).

Carpenter then filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Missouri raising the issues of: (1) disclosure of the confidential informant; (2) a Batson[3] violation; and (3) ineffective assistance of counsel. The district court denied the petition in all respects. We granted a certificate of appealability on the sole issue of the disclosure of the confidential informant.

## II. The AEDPA

When reviewing the denial of a § 2254 habeas petition, we review the district court's factual findings for clear error and its legal conclusions de novo. Simmons v. Bowersox, 235 F.3d 1134, 1130 (8th Cir. 2001). "We apply a presumption of correctness to the state court's findings of fact." Id.

To be entitled to relief under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, Carpenter must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" clause applies "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 405, 413 (2000). "A state

---

[3]Batson v. Kentucky, 476 U.S. 79 (1986).

4

court's decision must be 'mutually opposed' to clearly established Supreme Court precedent in order to satisfy the 'contrary to' clause." Simmons, 235 F.3d at 1130. The "unreasonable application" clause applies "if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

> Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." The state's court application must also be unreasonable. Whether a state court's application was unreasonable is an objective inquiry.

Simmons, 235 F.3d at 1130 (quoting Williams, 529 U.S. at 411) (internal citations omitted).

## A.  The Applicable Federal Law

In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme Court recognized the government's privilege to withhold the disclosure of the identity of a confidential informant. The Court declined to adopt a fixed rule for determining when disclosure was required. Id. at 62. Instead, it adopted a balancing test of "the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. Courts should consider factors such as "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id.

In determining whether disclosure is required, the threshold issue is whether the informant is a material witness. Disclosure of the confidential informant is not mandated "unless it is vital to a fair trial." United States v. Bourbon, 819 F.2d 856, 860 (8th Cir. 1987). "Where the witness is an active participant or witness to the

offense charged, disclosure will almost always be material to the accused's defense." Devose v. Norris, 53 F.3d 201, 206 (8th Cir. 1995) (footnote omitted). However, if the informant acts as a mere "'tipster,' i.e., a person who merely conveys information but does not witness or participate in the offense," disclosure is not required. Bourbon, 819 F.2d at 860; see also Barnes v. Dormire, ___ F.3d ___, No. 00-1407, 2001 WL 579673 (8th Cir., May 31, 2001) (holding that disclosure was not required when a confidential informant was present but acted merely as a facilitator for the transaction). The defendant has the burden of showing materiality, which "requires more than speculation that the evidence an informant may provide will be material to overcome the government's privilege to withhold the identity of the informant." United States v. Grisham, 748 F.2d 460, 463-64 (8th Cir. 1984).

## B. The Role of the Confidential Informant

Carpenter cannot meet the "contrary to" AEDPA standard. The confidential informant helped initiate the first transaction: he took Officer Shinn to the residence where Officer Shinn purchased the crack cocaine. The informant, however, did not participate in or witness the actual transaction. Officer Shinn testified that he was in the bedroom alone with Carpenter and that the door was shut. In addition, the confidential informant did not help set up the second transaction: Officer Shinn called the pager number Blacky had given to him. Even if the confidential informant had witnessed the transfer of the piece of paper with the pager number, it would not make the confidential informant a material witness. Officer Shinn participated in and witnessed both transactions for which Carpenter was convicted and testified at trial to his first-hand account of the events. The confidential informant was not a material witness; therefore, the state court decision was not contrary to clearly established federal law as determined by the Supreme Court.

Carpenter has also failed to meet the AEDPA standard requiring an "unreasonable application of" clearly established federal law. In order to grant relief

6

under this clause, the state court decision must be objectively unreasonable. <u>See Simmons</u>, 235 F.3d at 1130. The informant took Officer Shinn to the residence where he met Blacky. The informant stayed in the living room the entire time Officer Shinn was in the bedroom with Carpenter. The door was closed so the informant could not have overheard the transaction. The informant did not help set up the second transaction and was not present when Officer Shinn met with Carpenter. On these facts, we cannot say that the state court's decision not to reveal the name of the confidential informant was objectively unreasonable.

## III. Conclusion

Carpenter has failed to meet the AEDPA standards for habeas relief. We therefore affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

7